FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ OCT 23 2006 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

ROBERTO MENDOZA,

                           Petitioner,

    -against-

JOHN KEANE, Superintendent, Sing Sing Correctional
Facility,

                           Respondent.

-------------------------------------------------------------- X

04 CV 585 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Petitioner, Roberto Mendozo, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 11, 2004. In his petition, petitioner claimed that: (1) his trial counsel was rendered ineffective by the insufficient availability of interpreters to enable a meaningful discussion between counsel and client; and (2) his equal protection rights under the Fourteenth Amendment of the U.S. Constitution were violated by the court's denial of an initial application for an interpreter in order to conduct trial preparation. For the reasons set forth below, the court denies his petition.

## BACKGROUND

Petitioner Roberto Mendoza was convicted, following a jury trial, of second-degree intentional murder and criminal possession of a weapon in the third and fourth degrees in violation of New York Penal Law §§ 125.25, 265.02 and 265.01, respectively. The primary evidence presented at trial linking the petitioner to the crime was the testimony of Fabiana

1

Castillo. Castillo testified that the petitioner forced her to steal a van that he used to commit the crime. She further testified that the petitioner subsequently confessed to her that he shot the victim, who was in a rival gang. On February 11, 1998, petitioner was sentenced to indeterminate terms of imprisonment of twenty-two years to life for the second-degree murder conviction and two to six years for the third degree weapon possession conviction. Petitioner was sentenced to an additional determinate term of imprisonment of one year for the fourth-degree weapon possession conviction. All sentences were ordered to run concurrently.

On February 19, 1998, petitioner filed a notice of appeal in the Appellate Division, Second Department. On January 12, 2001, he filed a motion to vacate his judgment of conviction pursuant to § 440.10 of the New York Criminal Procedural Law in the Supreme Court, Queens County. In that motion, petitioner asserted that his trial counsel was rendered ineffective because the trial court denied defense counsel's applications for a Spanish language interpreter to communicate with petitioner in preparation for trial and that, due to the rulings, defense counsel was only able to communicate with petitioner briefly during the court appearances and was prevented from conducting a factual investigation or adequately advising petitioner regarding his right to testify. The Supreme Court, Queens County, denied petitioner's § 440.10 motion on October 5, 2001. The court determined that, with respect to the court's ruling concerning the interpreter, petitioner's claim was procedurally barred because sufficient facts appeared in the record to permit adequate review of the claim on direct appeal. To the extent that petitioner contended that he did not have sufficient time to discuss the case or the ramifications of testifying with counsel, the court determined that petitioner's claim was procedurally barred because such a complaint could, with due diligence, have been placed on the

record. Finally, the court found that petitioner's substantive ineffective assistance of counsel claim was without merit, because petitioner had failed to demonstrate that he was not meaningfully represented at trial. The court determined that defense counsel performed skillfully at trial and found petitioner's allegations that the result would have been different had counsel been better able to communicate with his client to be purely conjectural. Petitioner moved for leave to appeal to the Appellate Division, Second Department.

On February 8, 2002, the Appellate Division, Second Department, granted petitioner's application for leave to appeal the denial of his § 440.10 motion. On appeal, Mendoza repeated the claims raised in his motion to vacate judgment, contending that the trial court's refusal to provide an interpreter to petitioner for the purpose of trial preparation effectively denied him the effective assistance of counsel and that petitioner was unable to communicate crucial information to his attorney that would have enabled counsel to make informed strategic decisions about his defense. Petitioner contended that the mandatory and permissive procedural bars were inapplicable because the necessary inquiry to resolve the issue – whether the defense strategy would have been different if petitioner had an interpreter and had been able to communicate with trial counsel – were not on the record and could not have been put on the record.

Meanwhile, in December 2001, petitioner perfected his direct appeal to the Appellate Division, Second Department, by filing a brief that raised two claims: first, that his guilt was not proven beyond a reasonable doubt, or alternatively, that the verdict was against the weight of the evidence because the testimony of a State's witness was incredible; and second, that he was denied his right to a fair trial by the court's failure to charge that a witness against him was an accomplice whose testimony required corroboration.

On October 21, 2002, the Appellate Division, Second Department, affirmed petitioner's judgment of conviction. People v. Mendoza, 298 A.D.2d 532, 745 N.Y.S.2d 665 (2d Dep't 2002). On that same date, the Appellate Division also affirmed the denial of petitioner's motion to vacate judgment pursuant to § 440.10 of the Criminal Procedure Law. People v. Mendoza, 298 A.D.2d 532, N.Y.S.2d 666 (2d Dep't 2002). The Appellate Division held that the Supreme Court had erroneously concluded that the motion was procedurally barred because, although discussion of the issue of whether petitioner was entitled to a Spanish interpreter appeared on the record, petitioner's claim involved affidavits and other matters outside the record that could not have been reviewed on direct appeal. The Appellate Division, however, agreed with the Supreme Court's conclusion that the claim of ineffective assistance of counsel was without merit and determined that the motion to vacate judgment was, therefore, properly denied.

Petitioner thereafter sought leave to appeal the Appellate Division's decision regarding his direct appeal to the New York Court of Appeals. The Court of Appeals denied petitioner's leave application on December 26, 2002. Petitioner also sought leave to appeal the Appellate Division's decision affirming the denial of his motion to vacate his judgment to the New York Court of Appeals. In petitioner's November 20, 2002 letter, petitioner implored the Court of Appeals to grant his motion for leave to appeal because it presented "a novel and important issue on the right to counsel for criminal defendants who do not speak English: whether a non-English-speaking defendant's effective assistance of counsel and equal protection rights under the state and federal constitutions are violated by the denial of an initial application for an interpreter in order to conduct trial preparation." On December 26, 2002, the New York Court of Appeals denied petitioner's leave application. People v. Mendoza, 99 N.Y.2d 561 (2002).

On February 11, 2004, petitioner filed the instant petition for a writ of habeas corpus pursuant to 8 U.S.C. § 2254. By opinion and order dated January 10, 2005, the court determined that the petitioner's equal protection claim was unexhausted and stayed the petition pursuant to Zarvela v. Artuz, 254 F.3d 374 (2d Cir. 2001), so that petitioner could exhaust his claim in state court. On June 6, 2005, the New York State Supreme Court dismissed the petitioner's motion to vacate judgment pursuant to § 440.10. People v. Mendoza, Ind. No. 3583/96 (Sup. Ct., Queens Co., June 6, 2005). The court held that petitioner had failed to establish that the court's denial of counsel's request for translators created a suspect classification or had a disparate impact. The Appellate Division, Second Department, denied his application for leave to appeal on August 31, 2005. People v. Mendoza, Ind. No. 3583/96 (2d Dep't, Aug. 31, 2005). On August 18, 2005, the petitioner informed the court that he has fully exhausted the equal protection claim. By order dated November 9, 2005, the court lifted the stay.

## DISCUSSION

### I. AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55

(2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law, . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v. Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).

## II. Petitioner's Claims

### A. *Ineffective Assistance of Counsel*

Petitioner argues that he was denied effective assistance of counsel due to inadequate investigation and trial preparation. Specifically, he claims that counsel was rendered ineffective

7

by the state court's denial of requests for an interpreter to enable counsel to consult with his client in preparation for trial. According to petitioner, the trial court's ruling effectively limited the opportunities for consultation between counsel and his client to brief exchanges during courtroom recesses at the pre-trial hearings and trial. Petitioner alleges that, as a result of limited opportunities for trial counsel to communicate with his client regarding defense strategy, counsel was unable to gain requisite knowledge and insight that would have enabled him to (1) effectively advise his client regarding his right to testify; (2) counter the jury's derogatory perception of a nickname that a trial witness used to refer to Mr. Mendoza; (3) dispute testimony that petitioner was a gang member by demonstrating that he did not have any tattoos; and (4) impeach the key prosecution witness, Castillo, by introducing witnesses to counter specific portions of her testimony. Petitioner presented this claim on collateral appeal pursuant to a § 440.10 motion, and the Appellate Division considered it and denied it on the merits. Thus, the court is precluded from granting habeas relief on this claim unless the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984).

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. As explained by the Supreme Court,

strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

Id. at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye towards benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

Petitioner has made a strong showing that, as a result of the language barrier between defense counsel and his client, counsel's assistance may have fallen below an objective standard of reasonableness. Counsel admits that he did not conduct an in depth interview with his client in order to determine his whereabouts on the evening in question and his perspective on the events that transpired and to ascertain whether he would be a credible witness if he testified. (Siff Aff. ¶ 16.) As a result, counsel did not investigate potential alibi witnesses that his client could have suggested to him, nor, with the limited time that he spent with his client, was he able to understand and investigate leads that could have assisted in impeaching Castillo's testimony at trial. (Id. at ¶¶ 15, 17, 18.)

9

Furthermore, counsel had no reasonably informed, strategic purpose in failing to do so. In fact, counsel attempted on at least two occasions to apply for the services of a translator to engage in trial preparation with his client, and his requests were denied. (Id. at ¶¶ 6-7, 13-14.) With regards to allegations that counsel was ineffective for failing to investigate the factual backdrop of a search implicating the defendant in a robbery, the Second Circuit found that "consultation with [the defendant] would seem to represent a minimal level of investigative effort." Nell v. James, 811 F.2d 100, 106 (2d Cir. 1986). Given that the petitioner was being tried for second degree murder and the evidence against him primarily derived from the testimony of one witness, it is possible that counsel's minimal consultation in this case similarly fell below the objective standard of "reasonableness under prevailing professional norms" governing the conduct of trial counsel in criminal cases. See Strickland, 466 U.S. at 688.

However, the court does not need to decide whether counsel's performance was constitutionally deficient, because the petitioner has failed to meet his burden of establishing that he was sufficiently prejudiced by counsel's representation. A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one. See id. at 697. Except in specific instances not applicable to this case, prejudice to the petitioner must be established regardless of whether the source of the allegedly deficient performance was the court or counsel himself. See U.S. v. Cronic, 466 U.S. 648, 659 n.25, 662 n.31 (1984).[1] The New

---

[1] Petitioner contends that he does not need to make a showing of prejudice because his trial counsel entirely failed to "subject the prosecutor's case to meaningful adversarial testing." Bell v. Cone, 535 U.S. 685, 696 (2002); United States v. Cronic,

York State Supreme Court, whose conclusion on the merits was affirmed by the Appellate Division without explanation, determined that

> [t]he allegation that if communication between trial counsel and defendant were better, defendant would have testified, displayed his person to the jury in order to establish the absence of gang-related tattoos or that he would have called a certain witness, thereby creating the possibility of a different verdict, is purely conjectural, and does not provide a basis to grant the relief requested.

People v. Burton, Ind. No. 3593/96, at 6. In reviewing the petitioner's claim under the appropriate deferential standard established by AEDPA, I agree.

The petitioner has not met his burden of demonstrating that there was a "reasonable probability" that the proceedings would have had a different result if counsel had not erred. See Strickland, 467 U.S. at 694. Establishing reasonable probability requires showing a "probability sufficient to undermine confidence in the outcome" based on "the totality of the evidence before the judge or jury." Id. at 694, 696. Petitioner has not introduced sufficient evidence to meet this requirement.

Petitioner claims that, if counsel was able to converse more freely with him, counsel may have advised petitioner differently regarding whether he should exercise his

---

466 U.S. 648, 659 (1984). However, like in Bell v. Cone, petitioner's argument is "not that his counsel failed to oppose the prosecution throughout the . . . proceeding as a whole, but that his counsel failed to do so at specific points." See id. at 697. In reviewing petitioner's ineffective assistance of counsel claim, the state court emphasized that "a review of the trial record reveals that counsel made a cogent opening statement, foreshadowing defendant's involvement in the case, conducted tenacious and skillful cross-examination and put forward a well-reasoned summation which challenged the accuracy and credibility of the People's witnesses." People v. Mendoza, Ind. No. 3583/96, at 6. The court has been given no reason to disturb this finding. Consequently, in order to demonstrate ineffective assistance of counsel, petitioner must establish that he was prejudiced by the aspects of counsel's conduct that were allegedly deficient.

right to testify. (Pet'r Mem. 6.) However, neither petitioner's trial counsel nor petitioner himself represent that, had language not presented the barrier that it did, Mr. Mendoza actually would have testified. In the affidavit submitted by petitioner's trial counsel, he states only that, "My ability to assess Mr. Mendoza's strengths and weaknesses on the stand was severely hampered because I never had the time to question him and see how he held up." (Siff Aff. § 20.) He does not state that, had he understood petitioner's version of the events as subsequently relayed in his affidavit to the § 440 court, he would have advised his client to testify. Petitioner also does not assert that he would have testified had he been advised differently. Furthermore, as respondent points out, it is not clear that petitioner's testimony would have helped him very much. The substance of petitioner's representation of events on the evening in question does not substantially differ from Detective Hector DeFendini's trial testimony relaying petitioner's alleged statements to the police (Pet. Mem. 12; Tr. 491-92, 496). In addition, while petitioner's account of the day of the murder and the days preceding it differs from Castillo's, they share many individuals, places, and events in common, which might have helped to corroborate portions of her story. In particular, his testimony that, on the day of the murder, he rode in the same van that was identified leaving the murder scene might have further incriminated him. (Pet'r Aff. ¶¶ 23-24; Resp't Mem. 40-41.) Moreover, petitioner does not have a strong alibi for his whereabouts at the time that the murder was committed: he states that he was in a park with his co-defendant, who had pled guilty by the time of petitioner's trial, drinking, "having a good time together," and "fooling around." (Pet'r Aff. ¶ 21.) Petitioner further admits that he did not go to his work at a

12

Brooklyn factory that day as he was supposed to. (Pet'r Aff. ¶ 24.) In light of the fact that it is not clear whether petitioner would have testified, petitioner's explanation of the substance of his testimony is not enough to establish a reasonable probability of a different outcome if he had been able to engage in a more in-depth consultation with trial counsel.

Petitioner also alleges that, had counsel been able to speak with his client, he would have realized that the nickname "El Piojo" used by Castillo to refer to Mr. Mendoza was a common Latin American nickname without negative connotations or gang associations. (Pet'r Mem. 21.) Petitioner claims that the repeated use of this nickname by the prosecution was used to reinforce an image of him as a gang member. Petitioner submitted an affidavit by Esperanza Chacon Morales to substantiate his contention that the use of nicknames is common within the Mexican community and the nickname "Piojo," which technically means "louse" in English, is frequently used to refer to someone with a small build. (Morales Aff. ¶¶ 2-4.) Trial counsel claims that he would have used knowledge of the spelling of the term "Piejo" to challenge the accuracy of Detective DeFendini's translations of the statements of two Spanish-speaking witnesses, because he incorrectly recorded the alleged nickname as "Pieojo." (Siff Aff. ¶ 19.) However, neither trial counsel nor petitioner has explained why it would be essential for counsel to communicate with his client in order to gather this information. It appears that counsel could have asked the translator about the nickname's meaning and usage or consulted an expert like Ms. Morales. He could have also objected to the prosecution's use of the nickname to refer to his client rather than his proper name.

13

Petitioner further alleges that, if counsel had been able to communicate with him, he would have learned that petitioner is not in fact referred to as "El Piejo" and that he also knew the prosecution's witness by a nickname. Even if this information is accurate, it pertains to a peripheral issue in the trial and would not have a reasonable probability of affecting the case's outcome.

In addition, petitioner argues that, if translation services had been made available for pre-trial preparation, he could have told his attorney that he did not have any gang-related tattoos and this information could have been conveyed to the jury. (Pet'r Mem. 21.) However, this is the type of information that could have been relayed within the brief conversations that petitioner and his client were allowed. Furthermore, because the absence of tattoos is at best marginally probative of whether a person is affiliated with a gang, the absence of this information is unlikely to have influenced the outcome.

Finally, petitioner alleges that a pre-trial conversation with trial counsel would have enabled investigation of potential witnesses who could have impeached portions of Castillo's testimony. However, petitioner has not introduced any affidavits from these witnesses indicating that they would have testified if asked and providing the substance of their testimony, making this claim wholly speculative. Moreover, the testimony of these potential witnesses relates to peripheral matters that are unlikely to have impacted the outcome. For example, petitioner claims that one of Castillo's roommates might have been able to refute a portion of Castillo's story where she claimed that petitioner and his co-defendant dropped her off near her home on the day of the murder. (Pet'r Mem. 20-21.) He also claims that an Amoco attendant could have testified that Castillo was

14

driving the van that was used on the day of the murder, rather than riding as a passenger. (Pet'r Mem. 20.) In light of the difficulty of discerning whether these individuals would have testified at all and the collateral nature of any potential testimony, these allegations provide insufficient evidence to establish that their absence prejudiced the outcome of the trial.

In sum, petitioner has failed to establish that the state court acted contrary to or unreasonably applied federal law in denying petitioner's claim of ineffective assistance of counsel. Evaluating the respects in which petitioner alleged that he was prejudiced against the evidence of his guilt, it would be reasonable for the state court to determine that petitioner was not sufficiently prejudiced to satisfy the second prong of the Strickland analysis.

### B. *Equal Protection*

The petitioner alleges that the state court's denial of his applications for an interpreter violated his right to equal protection of the law under the Fourteenth Amendment on two grounds: (1) it impermissibly burdened the exercise of the right to counsel, a fundamental right; and (2) it constitutes disparate treatment that is impermissible because Mr. Mendoza is a member of a suspect class or, in the alternative, because it is not justified by a rational basis. When this claim was brought to the state court, the court held that petitioner was not denied equal protection, finding that,

> Neither Judiciary Law § 380, *et seq*, authorizing the appointment of interpreters, nor the trial court's rulings . . . created a suspect classification; rather their intent was to remove barriers to court arising from a 'naturally occurring' classification,

15

> that is, the ability to speak and/or understand the English language, thereby furthering the overall functioning of the court system and the rights of non-English speaking defendants.

Id. at 4 (citations omitted). The court further determined that petitioner was "unable to point to disparate treatment which deprived him of a substantial right enjoyed by similarly situated English-speaking defendants." Id. I find that, in so holding, the state court decision was not contrary to or an unreasonable application of federal law.

Petitioner's claim that any state action that burdens the exercise of the right to counsel is subject to strict scrutiny is not supported by federal law. Indeed, the exercise of the right to counsel is a fundamental right protected by the U.S. Constitution. Gideon v. Wainwright, 372 U.S. 335, 342-45 (1963). Furthermore, the Supreme Court has condemned state laws and procedures that created barriers to the exercise of this right by indigent defendants. See, e.g., Tate v. Short, 401 U.S. 395 (1971) (invalidating criminal penalties that made criminal defendants subject to incarceration if they could not pay a fine); Williams v. Illinois, 399 U.S. 235 (1970) (same); Douglas v. California, 372 U.S. 353 (1963) (holding that states must appoint counsel for indigent defendants on their first appeal as of right); Griffin v. Illinois, 351 U.S. 12 (1956) (striking down Illinois rule requiring convicted criminal defendants to purchase a state trial court transcript in order to appeal); see also Ross v. Moffitt, 417 U.S. 600, 605-09 (1974) (collecting cases); San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 20-22 (1973) (same). However, these precedents share two features in common: "because of their impecunity [the defendants who constituted the class discriminated against] were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." San Antonio Independent School Dist, 411 U.S. at

20-21. Here, while it was not contested that Mr. Mendoza was unable to afford to hire the services of a translator, petitioner has failed to establish that he was completely deprived of his right to counsel, as he was able to confer with trial counsel in admittedly-short sessions. Petitioner contends that the meaningful exercise of the right to counsel requires at least one open-ended interview with counsel. However, this argument is not supported by Supreme Court precedent, and thus the state court's rejection of it was neither contrary to nor an unreasonable application of established federal law.[2]

Petitioner's contention that denial of petitioner's application for an interpreter should be reviewed under strict scrutiny because he is a member of a suspect class similarly falls short. Petitioner is a member of a suspect class on the basis of his race, alienage and nationality. See Clark v. Jeter, 486 U.S. 456, 461 (1988) (race and national origin); Graham v. Richardson, 403 U.S. 354, 371-72 (1971) (race, national origin, and alienage). However, petitioner has not shown that state law or practice was responsible for discrimination against petitioner based on his race, alienage, or national origin. Rather, state law authorizes temporary provision of courtroom interpreters on a discretionary basis. See N.Y. Jud. § 387. The state trial court exercised these powers when it made an interpreter available for pre-trial and trial proceedings, during courtroom recesses, and for further consultations regarding whether petitioner wished to exercise his right to

---

[2] Petitioner also cites to the Second Circuit's decision in United States ex rel. Negron v. State of New York, 434 F.2d 386, 389 (2d Cir. 1970), in support of his equal protection claim. In Negron, the Second Circuit held that the rights of non-English speaking criminal defendants under the Sixth Amendment's Confrontation Clause were violated when no translation of witness testimony was provided. Thus, while that decision also involved the availability of translation services, the right that was interfered with was the right to confront witnesses and not the right to counsel. Consequently, this case does not provide a basis for petitioner's claim that the state court's denial of translation services for pre-trial preparation merits review under strict scrutiny.

17

testify. Petitioner has not demonstrated that the state trial court's denial of counsel's applications for an interpreter for pre-trial preparation, a decision that fell within its discretion, was motivated by considerations of race, national origin and alienage. Therefore, the state court reasonably applied federal law in determining that this claim does not warrant review under strict scrutiny.

Petitioner's final contention is that, even if strict scrutiny is not appropriate in this case, the trial court's actions were arbitrary and had no rational basis. The government has presented two justifications for limiting access to interpreters for conferences between counsel and criminal defendants in the general holding area: (1) decreasing security risks posed by broader access of interpreters to this area; and (2) protecting interpreters from communicable diseases. (Resp't Supp. Mem. 28). The limited availability of interpreters who are able to access the general holding area is substantiated in the record. At trial, when defense counsel renewed his request for an interpreter to consult with his client, he explained that he had not been able to obtain an interpreter from the court's office of interpreters who was available for this purpose due to the number of trials taking place. The court asked the courtroom interpreter to explain the problem, and the interpreter stated that his understanding was that only the three full-time Spanish interpreters had security clearance to access the general holding area; additional interpreters contracted on a per diem basis did not. (Tr. at 13-14.) Neither of the justifications posited by the respondent for these limitations is disputed by petitioner and together they establish that the state has, at a minimum, a legitimate state interesting in restricting access to the services of a translator to criminal defendants. Consequently, the state court's dismissal of petitioner's equal protection argument would not constitute an unreasonable application of federal law.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: October 20, 2006
Brooklyn, New York

SERVICE LIST:

*Counsel for Petitioner*
Lisa Napoli
Paul Skip Laisure
Appellate Advocates
2 Rector Street, 10th Floor
New York, NY 10006


*Counsel for Respondent*
John M. Castellano
Assistant District Attorney, Queens County
125-01 Queens Boulevard
Kew Gardens, NY 11415